BRAY et al. v. COBB.

(District Court, E. D. North Carolina.   December 30, 1898.)

1. BANKRUPTCY—REFEREES—DISQUALIFICATION BY INTEREST.

Under Bankruptcy Act 1898, § 39, providing that "referees shall not act in cases in which they are directly or indirectly interested," a referee is not disqualified by interest from acting in a particular case because he owes a debt to the bankrupt. The interest which will disqualify is an interest either in the proceedings in bankruptcy or in the estate of the bankrupt. But the judge, on being apprised of the fact that the referee is a debtor of the bankrupt, may, in his discretion, revoke the order of reference, and send the case to another referee.

2. SAME—APPOINTMENT OF SPECIAL REFEREE.

Under Bankruptcy Act 1898, § 43, when the referee to whom a case in bankruptcy would regularly be referred is absent or disqualified, the judge may appoint a special referee, and refer the case to him. This may be done before the answer of the alleged bankrupt is filed, and does not require the consent or approval of the respondent or his attorney.

3. SAME—ORDER OF REFERENCE—DEPUTY CLERK.

A deputy clerk of a court of bankruptcy has no authority to refer a petition in bankruptcy to the referee. An order of reference may be made by the clerk, but only in case the judge is absent from the district, or from the division of the district, where the petition is filed.

4. SAME.

An order of reference, made by the judge and attested by the deputy clerk, is valid.

5. SAME—ACTS OF BANKRUPTCY—ASSIGNMENT FOR CREDITORS.

Under Bankruptcy Act 1898, § 3, declaring that it shall be an act of bankruptcy if a person shall have "made a general assignment for the benefit of his creditors," the making of such an assignment is an act of bankruptcy per se, without reference to the debtor's solvency or insolvency at the time.

6. SAME—CONTROVERTING ALLEGATION OF INSOLVENCY.

Under Bankruptcy Act 1898, § 3, subsec. d, providing that when a person against whom an involuntary petition in bankruptcy is filed takes issue with and denies the allegation of his insolvency, it shall be his duty to appear in court on the hearing with his books, papers, and accounts, and submit to an examination, and that his failure to do so shall impose upon him the burden of proving his solvency, a simple denial of the fact of insolvency in the answer by an alleged bankrupt (who had previously assigned all his property for the benefit of creditors), unaccompanied by any affidavits, schedules, or other evidence, does not raise such an issue of solvency as is contemplated by the act, nor sustain the burden of proof.

7. SAME—DEMAND FOR JURY TRIAL—WAIVER.

In a case of involuntary bankruptcy, a demand for a trial by jury, as to the commission of the acts of bankruptcy alleged and the fact of insolvency, must be made by the debtor at or before the expiration of the time allowed for an answer,—10 days after the return day of the subpoena,—unless the time is extended by the court; if not demanded until 7 days later, trial by jury will be deemed to have been waived.

8. SAME—DISQUALIFICATION OF CLERK—TRANSFER OF CAUSE.

Relationship between the bankrupt and the deputy clerk of the district court in whose office the petition was filed will be cause for transferring the case to another seat of the court in the same district and division, and ordering the record to be filed and docketed in the office of the clerk of the court at the latter place.

In Bankruptcy.

E. F. Aydlett, for plaintiffs.

T. G. Skinner and G. W. Ward, for defendant.

PURNELL, District Judge.   On the 30th day of November, 1898, a petition to have George W. Cobb, individually and as surviving partner of Guirkin & Co., declared a bankrupt, was exhibited to the district judge, and, it appearing to the satisfaction of the said judge there was necessity therefor, a special messenger was appointed under equity rule 15, to execute the process in said proceeding.   The subpœna issued December 1st, and was made returnable on the same day. It was executed on December 1, in due form.   It further appearing that the referee for that division of the district was interested and disqualified (chapter 5, § 39b), John W. Albertson was appointed special referee, and upon his qualification as ordered the matter was referred to him as special referee (section 43).   The petition alleged as acts of bankruptcy that defendant had made an assignment with preferences amounting to $29,000 on the 19th day of October, 1898; that defendant is indebted to petitioners in the amounts set out, aggregating over $9,000, for which they have no security, and defendant has failed to pay such indebtedness; that the assignment hinders, delays, and defeats petitioners; that there are other creditors not secured, and the indebtedness of defendant amounts to over $50,000, which he is unable to pay; that all the estate of the defendant, Cobb, has been turned over to the trustee under the assignment.

On the 17th day of December defendant filed an answer admitting a majority of the debts set out in the petition and denying others. He admitted the assignment, but denied fraud, denied the allegation of insolvency, and alleged that he was solvent.   He denied that the assignment was made with intent to hinder and delay creditors, denied that there were other creditors, and denied that he was unable to pay his debts.   He admitted that his property had been turned over to the trustee under the assignment, and alleged that it was worth over $60,000.   On the same day, at 9 a. m., a petition was filed by the defendant for a trial by jury of the issue of insolvency and the acts of bankruptcy alleged.   Chapter 4, § 19.

There was a hearing December 19th before the special referee, and argument by counsel.   At an adjourned meeting the referee rendered his decision against defendant, but refused to sign an order adjudging him a bankrupt, when affidavits were filed, verified December 22, 1898, showing the referee is a debtor of defendant in these proceedings, and a petition filed asking for a review thereof by the judge.

The exceptions in the petition for review, are:   (1) That the special referee is disqualified under chapter 5, § 39, subsec. b.   (2) Because the referee was appointed before the answer and petition for a jury were filed, and without the knowledge, consent, or approval of respondent or his attorneys.   (3) Because the cause was not referred by the deputy clerk of the court at Elizabeth City.   (4) The clerk has no power or authority to refer this cause.   (5) That, answer having been filed denying insolvency, referee had no power to find as a fact or decree as a matter of law that the assignment referred to was an act of bankruptcy.

It is now, December 27, 1898, made known to the court for the first time, that the special referee appointed herein was and is a debtor of the respondent, and it is, to say the least, bad faith for the respond-

ent to have kept this knowledge secret until after argument, and the rendition of an adverse decision by the special referee. It taints with suspicion subsequent proceedings for litigants or their counsel to treat the court, or one of its officers, with such Punic faith in the initial stages of litigation. The fact, though, now having been brought to the attention of the court, must be considered. The referee was appointed by the judge, the referee of the division being interested, and the deputy clerk at Elizabeth City being a near relative of the respondent. Section 43. "Referees shall not act in cases in which they are directly or indirectly interested." Section 39, subsec. b (1). The meaning of this subsection depends much upon definition and construction. Interested in what? The estate or the bankrupt proceeding? He cannot be interested in the estate, for he is a debtor, and not a creditor. If he were a creditor, he would be interested; but he is a debtor, and there is no denial of the debt. He can have no interest in either the estate or the proceedings. The proceedings do not change his status. If respondent is adjudged a bankrupt, the debt must be paid; and, if the proceedings are dismissed, still he must pay. In no event is the remedy on the debt changed, or the debtor's liability increased, decreased, or affected. Nothing he can do or leave undone will affect his liability or reduce his indebtedness. If this were a disqualification, every time a man to whom a referee owed any debt, no matter how trifling, filed a petition or was proceeded against in bankruptcy, the referee would be disqualified, and the bankruptcy court would be constantly appointing special referees, to be removed as soon as the bankrupt, using every device to hinder, delay, and defeat creditors, should find after many days the referee owed him a small debt. The first ground of exception is, therefore, overruled, and it is held that the fact the special referee owes respondent a debt is not such an interest as is contemplated in section 39 as a disqualification to act as referee. To be disqualified, a referee must be directly or indirectly interested in the proceedings in bankruptcy or the estate of the bankrupt. In the case at bar the special referee is not interested, directly or indirectly, in either. He may not be unbiased or absolutely impartial; he may feel under obligations, or he may illustrate that a loan oft loses both itself and friend.

2. There is no force in the objection "that the referee was appointed before the answer and a petition for trial by jury were filed, and without the knowledge and consent or approval of respondent or his attorneys." Referees are appointed under section 34, by the judge, and as many as he may deem necessary (section 37); generally before any proceedings are instituted, without consultation with prospective litigants or bankrupts, their attorneys, or the approval of either. But a few words would be required to reduce this objection ad absurdum. The regular referee of the division of the district being absent or disqualified (as heretofore adjudged), the judge may act or appoint another referee, as was done in the case at bar. Section 43. And there is nothing in the act which requires the judge to wait until an answer is filed, a jury trial demanded, or the consent of the party proceeded against, or his counsel, obtained.

3. The fourth objection answers the third objection, and is sustained.

The deputy clerk at Elizabeth City being a brother-in-law of defendant, Cobb, and there being but one clerk in the district, at Raleigh, the judge referred the matter. The case at bar is an exception to the provision for reference by the clerk, the judge being in the district; and, even if this were within the purview of the power conferred on the clerk, he neglected to perform the duty. But, the cause having been referred by the judge, the clerk, and certainly the deputy at Elizabeth City, had no power in the premises. He has no judicial powers in bankruptcy, but is a ministerial officer, subject to the orders of the district judge, and a deputy clerk is not mentioned in the act. The deputy's authority and power are confined to those conferred by statute (Rev. St. § 558). An order signed by the judge and attested by the deputy clerk with the seal of the court is valid, but alone a deputy clerk cannot make an order of reference in bankruptcy. Whether he can do so in the name of the clerk, quære? The whole matter is now before the judge, and will be considered, decided, and disposed of on the record sent up, the pleadings and affidavits, which is the whole record, both as on petition for review and as acting referee under section 43.

The only remaining question is embodied in the fifth exception in these words: "That, answer having been filed denying insolvency, referee had no power to find as a fact, or decree as a matter of law, that the assignment referred to was an act of bankruptcy." The exception is on the ground of power in the referee. The ground of power will be disregarded, and the cause considered on the record as upon an original hearing as aforesaid. Defendant—for there is in fact but one —G. W. Cobb, in a dual capacity, admits the assignment of all his property in both capacities as set out in the petition, but denies insolvency, basing such denial on a difference of valuation of the property assigned. Was this an act of bankruptcy? The debts denied are insignificant. It is admitted there are other creditors not secured in the assignment, approximating $9,000, but the amount is immaterial. Chapter 3, § 3, subsec. 4, defining acts of bankruptcy is, "made a general assignment for the benefit of creditors." Defendant, therefore, committed an act of bankruptcy in the plain language of the statute. It is so held and adjudged. Other acts of bankruptcy defined in the section (chapter 3, § 3, subsec. 1) are based upon or connected with the condition of insolvency; but where there is a general assignment there is no limitation. It is per se an act of bankruptcy. Insolvency is denied. Chapter 1, § 1, subsec. 15, provides: "A person shall be deemed insolvent within the provisions of this act whenever the aggregate of his property, exclusive of any property which he may have conveyed, transferred, concealed or removed or permitted to be concealed or removed, with intent to defraud, hinder or delay his creditors, shall not at a fair valuation be sufficient in amount to pay his debts." Defendant has assigned all his property, and provided for the payment of others in preference to debts due petitioners. This is such intent to hinder or delay, if not, in law, to defraud, petitioners as is contemplated. But subsection d of section 3 provides that, a person denying the allegation of insolvency, it shall be his duty to appear with his books, and submit to an examination, and, upon

failure to so appear, the burden of proving solvency is upon him. This has not been done, but, after assigning all his property, insolvency is simply denied, and the denial, as appears in the answer, is based solely on an opinion as to the value of his estate, unascertained by schedules or other proper basis. The fact of the assignment is some evidence the property is not sufficient to pay all defendant's debts, but is made for the purpose and with the intent to prefer certain creditors, and to hinder and delay others. Such a denial does not raise a bona fide issue of solvency, as is contemplated in the act, or directed to be tried by a jury. Having failed to comply with the requirements of the section quoted above, the burden is upon defendant to prove solvency; and no evidence is offered to this end, not even a schedule or affidavit. Solvency is a complete defense (section 3, subsec. c), and a trial by jury provided for (section 19), except as otherwise provided "upon filing a written application therefor at or before the time within which an answer may be filed" (section 19). In bankruptcy proceedings time is frequently essential, and prompt action of great importance. The time prescribed in the statute is mandatory, and must be strictly observed, for the act provides: "If such application is not filed within such time a trial by jury shall be deemed to have been waived." Within what time an answer might be filed in the cause is of vital importance. The subpœna was made returnable and was served on December 1st. That was the return day. Section 18, subsec. b, limits the time within which the bankrupt or any creditor may appear and plead to the petition to 10 days after the return day. The time has not been extended, or asked to be extended by the court, hence the answer and written application for a trial by jury filed December 17th—17 days after the return day—were not made within the time allowed, the trial by jury was waived, and the adjudication should have been made pro confesso. It is therefore considered, ordered, and adjudged that G. W. Cobb, individually and as surviving partner of Guirkin & Co., has committed acts of bankruptcy as set out in the petition, and is hereby adjudged a bankrupt, within the meaning of the act of congress approved July 1, 1898, entitled "An act to establish a uniform system of bankruptcy throughout the United States"; that in view of the relationship of the deputy clerk at Elizabeth City and defendant, this cause be, and the same is hereby, transferred and removed from the district court of the United States for the Eastern district of North Carolina at Elizabeth City to the district court of the United States in and for the same district at New Berne, in said district; that the records, pleadings, and papers filed in the cause be filed and docketed in the said district court at New Berne, N. C., and be proceeded in according to law as though the original petition had been filed in, and the subpœna issued from, said district court at New Berne; that, to secure the unbiased and impartial administration contemplated by the statute, the former order of reference herein is revoked, and this proceeding is referred under the statute to L. J. Moore, referee for the Third division of the Eastern district of North Carolina, with instructions to proceed herein according to law.