In the Matter of the General Assignment for the Benefit of Creditors of ADOLPH VIETOR, Doing Business as FRED'K. PROBST & Co., to JOSEPH M. PROSKAUER, Assignee.

(Supreme Court, New York Special Term, October, 1917.)

Assignment for benefit of creditors — filing of — creditors' claims — duties of assignee — accounting — Laws 1909, chap. 17; Laws 1914, chap. 360, § 15(7, 8).

Where a general assignment for the benefit of creditors was filed in the proper county clerk's office on November 11, 1914, at 1:28 P. M. the filing of a creditor's claim with the attorneys for the assignee in the forenoon of November 11, 1915, is timely.

Section 15(7) of chapter 360 of the Laws of 1914, amending the Debtor and Creditor Law (Laws of 1909, chap. 17), and which declares that the court upon the final settlement of an insolvent debtor's estate shall have power to direct the assignee to " pay to the lawful creditors their proportionate dividend notwithstanding their claim has not been presented in accordance with the notice sent out by the assignee, provided one year has not elapsed since the filing of the general assignment," limits the power of the court to exonerate a creditor from the consequences of his failure to present his claim in accordance with such notice, to a period of one year after the filing of the general assignment, and a claim not filed until after the expiration of a full year is lost.

The court, however, has the power and it is also its duty to treat formal verified proofs of claim filed by creditors after the expiration of the prescribed time limit as amendments of unverified proofs of claim previously filed.

Under section 15(8) of chapter 360 of the Laws of 1914, giving the court power to allow secured creditors " such sum only as to the court seems to be owing over and above the value of their securities," a creditor bank which since the making of a general assignment for the benefit of creditors has realized on collateral security held by it will be allowed a dividend only upon the balance of its claim.

MOTION by an assignee for the benefit of creditors for an order allowing certain claims and for instructions as to other claims.

Rosenberg & Ball, for assignee and motion.

Satterlee, Canfield & Stone (Karl T. Frederick and Cornelius Hearn, Jr., of counsel), for Bank of New York, claimant.

Whitridge, Butler & Rice (Edwin T. Rice, of counsel), for Arbuthnot, Latham & Company, Banque Belge Pour l'Etranger, Conrad Hinrich Donner and the Standard Bank of South Africa, Limited, claimants.

Gregory, Stewart & Wrenn, for Estates of Frank Muller and Carl W. Volckman, claimant.

Rudd, Wood & Molloy, for Calixto Romero, claimant.

Arthur A. Michell, for Tabucalere Mexicana anonima, claimant.

GIEGERICH, J.   The assignee for the benefit of creditors by this motion seeks an order providing for the allowance by him of certain claims presented against the assigned estate and for instructions respecting certain other claims, some of which were not filed until a year after the filing of the general assignment and one of which is partially secured.  The application is made pursuant to section 14 of chapter 360 of the Laws of 1914, which provides that:  "It shall be the duty of the assignee to  *  *  *  report promptly to the court any claims presented to him which are not provable, or are incorrect or false and shall also report

Supreme Court, October, 1917.          [Vol. 101.

promptly for allowance all claims presented to him which are not disputed; * * * pay dividends as often as is compatible with the best interests of the estate," and also pursuant to subdivision 1 of section 15 of the same enactment, which prescribes that: " The court shall have power to allow claims, disallow claims, reconsider allowed or disallowed claims, and allow or disallow them against the estate." Questions are raised with respect to thirteen of the claims enumerated in schedule A. The assignee states that these thirteen claims were not filed with the assignee within one year from the date of the assignment. Subdivision 7 of section 15 of chapter 360 of the Laws of 1914 provides as follows: " The court shall have power * * * 7. To direct upon the final settlement of the estate that the assignee pay to the lawful creditors their proportionate dividend notwithsanding their claim has not been presented in accordance with the notice sent out by the assignee, provided one year has not elapsed since the filing of the general assignment." It appears from the New York county clerk's file mark stamped upon the general assignment that it was filed on November 11, 1914, at one twenty-eight P. M. On July 9, 1915, an order was made by this court authorizing the assignee to publish notice to creditors to present to him their respective duly verified claims against the assigned estate wherein the time for filing or presentation of such claims was limited to the 15th day of September, 1915. Of the thirteen claims which, according to the petition of the assignee, were not presented to him within the prescribed period of one year from the date of the assignment, one, that of Calixto Romero, was, according to the uncontradicted statements contained in the affidavit of the employee of the attorneys in fact for that claimant, filed with the attorneys for the assignee in the forenoon of November 11,

1915. As the general assignment was not filed until one twenty-eight P. M. on the 11th day of November, 1914, it would seem clear that the claim in question was filed within the year and should be allowed. This leaves for consideration the twelve claims which concededly were not filed until after the expiration of a full year. Under the law of this state as it existed under our former Assignment Act (Laws of 1877, chap. 466, with various amendments thereto) there was no such period of limitation of one year, nor any fixed period of limitation for the proof and allowance of claims. The power conferred upon the court by section 20 of that act " to decree payment of any creditor's just proportional part of the fund " had no limitation of time imposed upon it by the act. As was said in *Matter of Bowlby,* 34 Misc. Rep. 311, 318, 319, the court at the time speaking more particularly of the effect of section 19 of the former Assignment Act permitting any person claiming an interest, although not served, to appear on the return of the citation and become a party, on duly presenting his claim, " * * * at any time before final judgment, and even before the distribution of the fund, creditors may be permitted to come in and file their claims (Bish. Insolv. Debt. [3d ed.] sec. 441, p. 548, and cases cited) upon the term and condition necessitated by the circumstances of the particular case (3 Wait Pr. 364)," and a like wide liberty to creditors to come in and prove their debts at any time before the actual distribution of the fund was permitted by the law as it existed prior to the Assignment Act of 1877. *Wilder* v. *Keeler,* 3 Paige, 164; *Brooks* v. *Gibbons,* 4 id. 373; *Pratt* v. *Rathbun,* 7 id. 269. Under our present insolvent act, however, being Debtor and Creditor Law, chapter 17, Laws of 1909, as amended by chapter 360 of the Laws of 1914, section 15, subdivision 7, provides

as follows: " Section 15. *Power of Court.*— The court shall have power: * * * 7. To direct upon the final settlement of the estate that the assignee pay to the lawful creditors their proportionate dividend notwithstanding their claim has not been presented in accordance with the notice sent out by the assignee, provided one year has not elapsed since the filing of the general assignment." I am clearly of the opinion that this section limits the power of the court to exonerate a creditor from the consequences of his failure to present his claim in accordance with the notice sent out by the assignee to a period of one year after the filing of the general assignment. In other words, if the creditor has failed to present his claim in accordance with such notice, and one year has expired after the filing of the general assignment, his claim is lost. Although I have not been able to find any reported case under our present law discussing this point, light is thrown upon the question by numerous adjudications in the federal courts. In *Matter of Bimberg,* 121 Fed. Repr. 942, 943, the court said: " The language of section 57n is that ' claims shall not be proved against a bankrupt estate subsequent to one year after the adjudication.' The authorities hold that this language is more than a limitation of time, and is an absolute prohibition. (*Bray* v. *Cobb,* D. C., 100 Fed. 272; *Re Shaffer,* D. C., 104 Fed. 982; *Re Moebius,* D. C., 116 Fed. 47; Collier on Bank., 4th ed., p. 394). The moving creditor, therefore, if the discharge were vacated, could not share in any dividend." All the greater weight ought to be given to these decisions in the United States courts, although based upon statutory language not identical in terms with the language of our own statute, because of the manifest and wise purpose of our legislature to assimilate our state law to the federal law in the matter of the administration of the estates of insolvent

and bankrupt debtors. I therefore feel constrained to disallow the claims of the following eight creditors: Ruben R. Barrientos, Louis Delius & Co., Henkel & Co., Sucs. S. en C., La Tabacalera Mexicana, Melchers, Successors, Julio Normand, Gebruder Oettling, Wallace D. Barkley, Inc. This leaves for consideration the claims of four creditors, namely, Arbuthnot, Latham & Co., $56,690.54; Banque Belge Pour l'Etranger, $25,028.79; Conrad Hinrich Donner, $35,824.09; Standard Bank of South Africa, Lim., $2,509.62. With respect to the four claims just enumerated, the facts are as follows: On the day following the assignment the attorneys for Arbuthnot, Latham & Co. and the Standard Bank of South Africa, Lim., served notice upon the assignee on behalf of each of the two creditors just named, there being attached to such notices copies of the trust receipts executed by the assignor giving the amounts and maturities of the drafts drawn upon the letters of credit and showing substantially the amounts respectively due to the two creditors. Furthermore, the claims of these two creditors were, immediately after the making of the assignment, brought to the notice of the assignee and his accountants and were checked up with the entries upon the assignor's books relating to such indebtedness. The claims of the Banque Belge Pour l'Etranger and Conrad Hinrich Donner were also presented to the assignee in the month following the date of the assignment, with statements of account showing the net indebtedness and the particulars thereof in accordance with the books of the assignor, and correspondence was had between the attorneys of the two creditors last named and the assignee concerning such claims during the three months immediately following the assignment. No properly verified proofs of claim of any of the foregoing four claims were filed with the

assignee, however, within one year after the filing of the assignment; but after the lapse of such year properly verified proofs of claim were filed at varying dates in each instance. The question for determination with respect to these four claims is whether the more or less informal method of presenting the claims without verification within the year is a sufficient foundation to support an act of the court in allowing the subsequent formal proofs to be received as amendments of the earlier and insufficient notices. Upon this point also great help is found in the decisions of the United States courts. In *Matter of Kessler*, 184 Fed. Repr. 51, 53, the court said: " It has been repeatedly held that a ' proof of claim ' which is defective in some substantial particular may be amended, and that such amendment may be made subsequent to the expiration of one year after adjudication, although the effect of such amendment may be that ' proof of claim ' is thereby effectively made only after the year limited by section 57n (Act July 1, 1898, c. 541, 30 Stat., 561, U. S. Comp. St., 1901, p. 3444). The great liberality of the courts in that regard is shown by an analysis of some of the decided cases. In *Hutchinson* v. *Otis* (First Circuit, 8 Am. Bankr. Rep., 382, 115 Fed., 937, 53 C. C. A., 419) there had been filed within the year ' a proof which failed in very substantial particulars ' to comply with the general orders. Subsequently, after expiration of the year, the creditors were allowed to file a substituted proof of claim. This course was approved, the court saying: ' Courts of bankruptcy, like courts of admiralty, permit amendments with a most liberal hand; and as there was enough in the original proof by which to amend, and as the District Court thought it was equitable to allow the amendment, the appeal cannot be maintained.' This decision was affirmed in the Supreme Court (*Hutchinson* v. *Otis*, 190 U. S., 552, 23 Sup. Ct., 778, 47 L. Ed., 1179).

In a case before this court (*In re Roeber*, 127 Fed. 122, 62 C. C. A., 122) the District Judge had, subsequent to the year, allowed an alleged proof of claim to be amended. , It was inartificially drawn, but contained averments that there was due and owing to creditors a stated sum, for materials furnished to the bankrupt in the erection of a building, and that a certain sum of money was security therefor. It was not signed by the creditor, nor was it verified, nor did it contain any statement of payments. The amendment supplied these defects, and we affirmed the District Judge, saying: ' Bankruptcy courts have the usual powers of courts of justice, upon motion and for good cause to allow amendments. All parties were advised of the claim within the year. There is no dispute that the amount claimed is justly owing from the bankrupt. The amendment was in furtherance of justice and within the legitimate exercise of a power of amendment.' '' The court further said in differing from the view of the judge below: '' We do not concur with the conclusion that it (referring to the written statement filed with the assignee) did not contain in writing any indication that it is a claim against the bankrupt estate. It was not sent until after assignment, and was expressly sent, not to Kessler & Co., but to the assignee as a claim against their estate. It did not contain any statement in reference to security, nor was it verified, nor was it in the form prescribed; but it certainly notified the assignee and, when it was by him turned over to the receiver, notified the latter that Heine & Co. claimed that the estate of Kessler & Co. owed the stated sum of money as a result of transactions therein set forth.'' So, too, in *Hutchinson* v. *Otis*, 190 U. S. 552, 555, the court said: '' The proof of debt originally filed is admitted to have been defective. A substituted proof was filed by consent of the trustee more than a year after the adjudication, the facts

having been agreed upon in the meantime and an appeal taken. It is argued that the allowance .of the amendment is within section 57n forbidding proofs subsequent to one year after the adjudication, etc. The construction contended for is too narrow. The claim upon which the original proof was made is the same as that ultimately proved. The clause relied upon cannot be taken to exclude amendments. An example similar in principle is the allowance of an amendment setting up the same cause of action after the statute of limitations has run, when the original declaration was bad (*Sanger* v. *Newton*, 134 Mass., 308).'' I think it is plain without discussion that the principles enunciated in the foregoing extracts establish not only that the court in the present case has the power, but also that it is its duty to treat the formal verified proofs filed after the expiration of the prescribed year as amendments of the respective previous notices. These four claims are therefore allowed. So far as concerns the claim of Von Dinel, Rode & Co., which is not mentioned in either of the schedules annexed to the petition of the assignee, I am of the opinion that it should be disallowed, for the reason that it was not presented within the statutory period nor have these claimants presented such facts as would bring their claim within the rule as to amendments above set forth. No objection has been made to any of the claims enumerated in schedules B and C, and they are therefore allowed for the respective amounts recommended for allowance by the assignee, as are all other claims enumerated in schedule A in respect to which no question has been raised. One question alone remains, and that relates to the extent to which the secured creditor, the Bank of New York, shall be allowed to participate in the fund in the hands of the assignee. The creditor has a claim amounting to $133,030.23 and had in its possession collateral security for the payment of the

amount, on which collateral it has since the assignment realized the sum of $77,830.59, and there still remain three or four small items which have not been reduced to cash, but which are said to be long overdue drafts on foreign institutions where payment has been in part delayed by the war, the value of which is very doubtful. On behalf of this claimant it is argued that it should be permitted to have its dividend from the assignee upon its entire claim of $133,030.23, instead of upon the balance remaining of that claim after applying it upon the value of the collateral security. The assignee resists this theory and contends that the dividend should be allowed only upon the balance. My conclusion is in favor of the contention of the assignee. The argument on behalf of the claimant bank is based upon the decisions of courts of equity in this state, of which *People* v. *Remington & Sons,* 121 N. Y. 328, is a leading example, which hold that, upon principles of equity jurisprudence, the creditor in such a situation should have his dividend upon his entire claim, undiminished by the value of the collateral. The question in this state is now no longer left, however, to be determined upon principles of equity jurisprudence as laid down by the courts, but is governed by statute. The same statute above referred to (Laws of 1914, chap. 360, amending Laws of 1909, chap. 17) provides as follows: " Sec. 15. *Power of Court* — The court shall have power: * * * 8. To allow secured creditors such sum only as to the court seems to be owing over and above the value of their securities." This provision seems to be another instance where our legislature has sought to assimilate the insolvency act in our state to the Bankruptcy Law of the nation. Section 57e of the Bankruptcy Act provides as follows: " Claims of secured creditors and those who have priority may be allowed to enable such creditors to participate in the proceedings of creditors' meetings held prior to the

Supreme Court, October, 1917.          [Vol. 101.

determination of the value of their securities or prior-
ities, but shall be allowed such sums only as to the
courts seem to be owing over and above the value of
their securities or priorities.'' It may be conceded
that the bankruptcy provision just quoted is more
clearly worded than is our own statute on the point,
because the latter on its surface seems to leave open
the question whether the word '' sum '' refers to the
sum of the claim which the secured creditor shall be
allowed to prove or the sum of the dividend which he
shall be allowed to receive. Upon consideration, how-
ever, it seems abundantly clear that it must have been
the former meaning and not the latter which the legis-
lature had in mind in adopting this statute. If it be
held that the statute means what the claimant bank
contends, namely, that a secured creditor shall not be
allowed to receive from both sources, namely, the
funds of the insolvent estate and the securities which he
holds, more than the full amount due him, we thereby
ascribe to the legislature the enactment of a meaning-
less provision. So far as I am aware, no decision nor
any practice in the distribution of the estates of
insolvent debtors ever provided for the payment to
any creditor of any character, under any possible cir-
cumstances, of more than 100 per cent of the amount
due him, and it is impossible for me to conceive any
ground on which any one could make such a conten-
tion. It would have been wholly purposeless, there-
fore, for the legislature to declare that a thing should
not be done which never had been done and which no
one had ever argued should be done. But, on the other
hand, there was a debated question whether a secured
debtor should be allowed to prove his claim in the full
amount thereof or only in the amount over and above
the value of his securities. The courts of this state
had taken a stand on this mooted question in favor of
allowing proof of the full amount. The federal stat-

ute of bankruptcy made the contrary provision and permitted the proof only of the excess. In such a situation the legislature of our state, in a statute assimilating our law in other respects to the federal law, spoke on this debated point, and I think it should be held that by the language used they intended to preclude creditors from proving the full amount of their debt, as they had theretofore been permitted to do, and thereafter to allow them to prove only the amount over and above the value of their securities. Before I can determine in what amount the creditor bank should be permitted to prove its claim, it will be necessary to have some more definite information as to the value of the securities not yet realized upon. Evidence of such value should be submitted within five days after the publication of this opinion. In all other respects the motion is disposed of as indicated.

Ordered accordingly.